**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**MAHLI, LLC**                                                                        **PLAINTIFF**

**V.**                                               **CIVIL ACTION NO. 1:14cv175-KS-MTP**

**ADMIRAL INSURANCE COMPANY**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Plaintiff Mahli, LLC's Motion to Preclude the Proposed Testimony and Strike the Expert Report of Defendant's Expert Steven Dockens ("Motion to Strike Dockens") [64], Motion to Preclude the Proposed Testimony and Strike the Expert Report of Defendant's Expert Joseph LaHatte ("Motion to Strike LaHatte") [66], and Motion for Summary Judgment [68].  Also pending before the Court are the Defendant Admiral Insurance Company's Motion *in Limine* to Exclude Expert Testimony and Report of John Michael Agosti ("Motion to Exclude Agosti") [70] and Motion for Summary Judgment [72].  Having considered the submissions of the parties, the record, and the applicable law, the Court finds that:

1)  Mahli, LLC's Motion to Strike Dockens [64] should be granted in part and denied in part;

2)  Mahli, LLC's Motion to Strike LaHatte [66] should be denied;

3)  Mahli, LLC's Motion for Summary Judgment [68] should be denied;

4)  Admiral Insurance Company's Motion to Exclude Agosti [70] should be granted; and

5)  Admiral Insurance Company's Motion for Summary Judgment [72] should be granted in part and denied in part.

## BACKGROUND

This action involves a dispute regarding insurance coverage for a fire loss occurring at the Howard Johnson Hotel (the "Hotel" or "Subject Property") in Ocean Springs, Mississippi.  Mahli, LLC ("Mahli") owned and operated the Hotel at all times relevant to the Complaint.  The Hotel is an insured premises under Policy No. PR000008459-02 (the "Policy"), which was issued by Admiral Insurance Company ("Admiral") to Mahli.  The Policy provides commercial property coverage and specifies a policy period from February 22, 2012 to February 22, 2013.

On October 17, 2012, a fire significantly damaged the Hotel.  On October 18, Admiral acknowledged receipt of Mahli's fire loss claim.  Admiral subsequently investigated the claim, taking such measures as retaining Trinity Insurance Services to act as its local adjuster and determine the extent of damages, hiring EFI Global to investigate the origin and cause of the fire, and taking the examination under oath ("EUO") of Surjit Singh, Mahli's owner and managing member.  On July 9, 2013, Admiral sent Mahli written notice of its decision to deny the claim.  Admiral advised Mahli that its claim for coverage was void or excluded under the Policy because the investigation showed "that the fire was of incendiary origin for which you are responsible, or had knowledge of . . . ."  (Denial Letter [67-1] at p. 1.)

Prior to Admiral's denial of coverage, Economy Inns, Inc. ("Economy")[1] filed suit

---

[1] Economy is listed as a mortgage holder under the Policy.

against Mahli, Singh, Darshan Kaur,[2] Admiral, and The Peoples Bank ("Peoples")[3] in the Circuit Court of the First Judicial District of Harrison County, Mississippi (the "State Action"). (*See* State Compl. [72-9].)  Economy sought, *inter alia*, a judgment declaring that it and Peoples are entitled to $4,000,000.00 in building coverage.  In or around December of 2013, Admiral agreed to pay Economy and Peoples $1,702,583.61, representing the actual cash value of the loss minus the deductible.  (*See* State Order [72-10] at ¶ 9.)  Economy and Peoples accepted the payment, but disputed that $1,702.583.61 was the actual cash value of the Subject Property and reserved the right to seek additional payments from Admiral.  (*See* State Order [72-10] at ¶¶ 9, 16.)  It appears that the State Action remains pending as of the date of this opinion and order.

On April 21, 2014, Mahli filed suit against Admiral in this Court.  (*See* Compl. [1].)  The Complaint asserts seven counts:  (1) declaratory judgment; (2) negligence/gross negligence/reckless disregard for the rights of plaintiff; (3) specific performance; (4) waiver and estoppel; (5) indemnity; (6) unjust enrichment/constructive trust; and (7) bad faith.  Mahli demands a judgment awarding actual damages for the amounts it should have been paid under the Policy, extra-contractual damages, punitive damages, costs, pre-judgment and post-judgment interest, and attorneys' fees.  Subject matter jurisdiction is asserted on the basis of diversity of citizenship between the parties.  *See* 28 U.S.C. § 1332.

---

[2] Darshan Kaur is Singh's wife and a named insured under the Policy.

[3] Peoples is also identified as a mortgage holder under the Policy.

Admiral's Motion to Exclude Agosti [70] and Motion for Summary Judgment [72], as well as Mahli's Motion to Strike Dockens [64], Motion to Strike LaHatte [66], and Motion for Summary Judgment [68] were all filed on April 17, 2015.  The motions have been fully briefed and the Court is ready to rule.

## DISCUSSION

**I.    Motions to Exclude Expert Testimony**

**A.    Standard of Review**

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A trial judge has a "gatekeeping obligation" under Rule 702 to ensure that all expert testimony is both reliable and relevant.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).  Rule 702's "relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).  In order to be reliable under

Rule 702, the expert opinion must "be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Id.* (citations omitted).

*Daubert* set forth several factors bearing on the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique can be tested, whether the theory or technique has been published or subjected to peer review, and the general acceptance of the theory or method in the applicable community.  509 U.S. at 593-94.  The Supreme Court later recognized that *Daubert*'s factors "may or may not be pertinent in assessing reliability," since the specific issue, the subject of the expert's testimony, and the expert's area of expertise will vary from case to case.  *Kumho Tire Co.*, 526 U.S. at 150 (citation omitted).  Nonetheless, "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152.

The court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*  However, the judge's role as gatekeeper is not meant to supplant the adversary system since "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596 (citation omitted).  "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the

testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).  Although the court's focus should be on the expert's principles and methodology, as opposed to the conclusions they generate, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

### B.     Mahli's Motion to Strike Dockens [64][4]

Steven Dockens is a certified public accountant and manager at Alexander, Van Loon, Sloan, Levens & Favre, PLLC.  Admiral has designated Dockens to provide expert testimony regarding Mahli's financial ability to operate as a going concern at the time of the fire and during the months and years leading up to fire.  Dockens is also expected to provide testimony concerning Mahli's loss in business income that might be covered under the Policy.  Dockens' written report contains the following opinions pertinent to the subject motion:

**Opinion #1**

It is my opinion that events occurring prior to the October 17, 2012 fire created such significant financial difficulties for both Mahli, LLC (the "hotel" or "Mahli") and its owner, such that there would be substantial doubt of the hotel's ability to continue as a going concern prior to the time of the fire. . . .

---

[4] Mahli requests an evidentiary hearing on this motion and its separate Motion to Strike LaHatte [66].  Trial courts possess broad discretion in deciding whether to hold hearings when the competency of expert testimony is challenged under *Daubert* and its progeny.  *See United States v. Liu*, 716 F.3d 159, 167 n.19 (5th Cir. 2013) ("[A] trial court has broad discretion in determining how to perform its gatekeeper function . . . .") (citation omitted); *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) (holding that the district court was not required to conduct a *Daubert* hearing).  The Court finds that a hearing is unnecessary to resolve Mahli's challenges to the expert testimony of either Dockens or LaHatte.

**Opinion #2**

It is also my opinion that said owner of Mahli [Surjit Singh] was experiencing significant personal financial difficulties as a result of the poor financial position of Mahli . . . .

(Dockens Rep. [65-3] at pp. 5, 6.)

### 1.    Whether Dockens' Opinions Invade the Province of the Jury

Mahli argues that Dockens fails to offer any methodology for interpreting complex financial data.  Rather, Dockens purportedly takes basic facts from financial records and concludes that Mahli suffered from financial distress.  According to Mahli, Dockens' opinions are inadmissible under Rule 702 because the jury can take the facts and draw its own conclusions as to whether Mahli or Sing possessed a financial motive to commit arson.

The finances of Mahli and its principals at the time of the fire are at issue in this case given Admiral's reliance on civil arson as a defense to payment of insurance proceeds.  As part of this defense, Admiral will have to show "motive on the part of the insured to destroy the property."  *Allstate Ins. Co. v. McGory*, 697 So. 2d 1171, 1174 (¶ 11) (Miss. 1997) (citation omitted).[5]  An insured's financial difficulties can create a jury question on the issue of motive.  *See id.* at 1175 (¶ 18).

───────────────

[5] The Court applies Mississippi's substantive law in this diversity case involving a dispute over insurance coverage for damage to property located in Mississippi.  *Cf. Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 425-26 (5th Cir. 2010) ("Because this diversity case involves 'the interpretation of insurance policies issued in Louisiana for property located in Louisiana,' that state's substantive law controls.") (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)).

The Court finds that the jury's consideration of motive would be aided by Dockens' technical knowledge as an accountant and application of financial and accounting principles in determining that:  (i) Mahli suffered an overall cash loss in 2011; (ii) Mahli lacked sufficient revenue to cover operating expenses, make debt payments, and produce a profit for the nine months prior to the fire; (iii) Mahli's liabilities exceeded its assets in 2011 and 2012; and, (iv) Singh would not have been able to contribute additional capital to the business prior to the fire.  (*See* Dockens Rep. [65-3] at pp. 5-7.)  Although it is possible that some members of the jury could review the same information as Dockens and come to their own conclusions regarding Mahli's financial stability, "an expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding."  *Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004) (rejecting the argument that a financial analyst's testimony should be excluded because his damage calculations were based on simple arithmetic; and, finding that the expert's "ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury") (citation omitted). Allowing Dockens to testify based on his review of numerous financial documents, including, but not limited to, banking records, tax returns, mortgage documents, and payroll records, should facilitate and make less complex the jury's task of evaluating Mahli's finances.  *Cf. Russ v. Safeco Ins. Co. of Am.*, No. 2:11cv195, 2013 WL 1310501, at *22 (S.D. Miss. Mar. 26, 2013) (determining that the jury should benefit from hearing a financial expert's opinions given her study of numerous technical documents relating to an insured's financial condition).

-8-

The Court also finds that Dockens' opinions regarding Mahli's ability to operate as a going concern and Singh's personal financial situation fall on the admissible side of the line separating impermissible legal conclusions from allowable testimony as to ultimate factual issues.  *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983) (providing that Federal Rule of Evidence "704 abolishes the per se rule against testimony regarding ultimate issues of fact," but does not allow an expert witness to express legal conclusions) (citations omitted).  Thus, Dockens' proposed expert testimony does not invade the province of the jury and Mahli's first objection is overruled.

### 2.    Whether Dockens' Methodology Was That of a Disinterested and Objective Expert

Mahli posits that Dockens' proposed testimony should be disallowed because prior to writing his report, Dockens was exposed to information that purportedly kept him from being objective and disinterested.  Dockens learned from various sources, such as the Complaint [1] and EFI Global's fire investigation report, that the fire that damaged the Hotel was incendiary, i.e., intentionally set, and that Admiral suspected the owner of starting the fire.  Dockens purportedly failed to take an objective, scientific approach in rendering his opinions in light of these circumstances.

Mahli is essentially arguing that Dockens should be stricken on the basis of bias. This objection fails for two reasons.  First, Mahli ignores Dockens' sworn deposition testimony to the effect that he only read documents concerning the fire at the Hotel because they were part of the file given to him, and that these documents did not affect his evaluation of the financial condition of the business.  (*See* Dockens Dep. [64-4]

13:17-15:23, 17:4-12.)  The Court will not presume that Dockens is lying for purposes of the subject motion.  Second, "[f]inding an expert witness so biased that his testimony cannot be considered regardless of his credentials is not done lightly, and" no "malignance" from Dockens toward Mahli has been demonstrated warranting exclusion. *Fair v. Allen*, 669 F.3d 601, 606 (5th Cir. 2012) (rejecting the argument that an expert's testimony was too biased to be admitted); *cf. Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993) ("Nothing in the Federal Rules of Evidence prohibits a party from serving as an expert witness.").  Dockens' objectivity and whether he should be considered a disinterested witness based on his knowledge of the underlying fire are for the jury to assess in considering his credibility.  *See Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1135-36 (5th Cir. 1985) (holding that the impartiality of the plaintiff's medical expert, in light of the fact that almost all of his patients were referred to him by plaintiff's attorneys, was for the jury to consider).

### 3.   Whether Dockens' Opinions Are Relevant

Mahli contends that Dockens' opinions are irrelevant because Admiral had no information from him or his accounting firm at the time it denied Mahli's claim in July of 2013.  The Court agrees that any information Admiral received from Dockens after it denied Mahli's claim would be irrelevant to the determination of whether Admiral possessed a legitimate or arguable basis for the claim denial.  *See Sobley v. S. Natural Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000) ("[O]nce coverage is established, a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance

company.") (citations omitted).[6]  However, the issue of coverage for Mahli's claim is also before the Court given count one of the Complaint.  Among other things sought under this count, Mahli requests a declaration that Admiral "breached its policy obligations to its insured and owes coverage for the damage sustained to Plaintiff's insured property . . . ."  (Compl. [1] at ¶ 24.)  This request implicates Admiral's civil arson defense.  Arson by an insured is a defense to an insurer's liability even in the absence of a policy provision expressly excluding coverage for intentional burning.  *Allstate Ins. Co.*, 697 So. 2d at 1174 (¶ 10) (quoting *McGory v. Allstate Ins. Co.*, 527 So. 2d 632, 634 (Miss. 1988)).  Mahli fails to cite any court opinion limiting the determination of coverage based on an arson defense solely to evidence preexisting the insurer's claim denial.  There is, in fact, legal authority to the contrary.  *See Polk v. Dixie Ins. Co.*, 897 F.2d 1346, 1347-49 (5th Cir. 1990) (affirming the trial court's decision to allow evidence regarding the plaintiff's motive to commit arson that was not disclosed in discovery and that was only provided to the defendant insurer's attorney during the trial), *vacated on other grounds*, 501 U.S. 1201, 111 S. Ct. 2791, 115 L. Ed. 2d 965 (1991); *cf. FDIC v. Denson*, 908 F. Supp. 2d 792, 797-98 (S.D. Miss. 2012) ("Mississippi law allows an insurer to rely at trial on additional defenses to coverage that were not originally given as a basis for the insurer's refusal to pay a claim.") (citation omitted).  Therefore, the Court finds Dockens'

---

[6] The legitimacy of Admiral's reason for denying the claim bears upon Mahli's requests for extra-contractual damages and punitive damages.  *See Hoover v. Unit. Servs. Auto. Ass'n*, 125 So. 3d 636, 642 (¶ 16), 643 (¶¶ 21-22) (Miss. 2013) (affirming the grant of a directed verdict in favor of the defendant insurer on the plaintiffs' requests for emotional distress damages and punitive damages based on the existence of an arguable basis for the denial of their insurance claim).

opinions relevant to count one of the Complaint notwithstanding the moment in time

Admiral received the opinions.

> **4.    Whether Dockens' Opinions Regarding Hotel Replacement Reserves Should Be Excluded**

Dockens' written report contains several explanations in support of his opinion

regarding Mahli's ability to operate as a going concern.  Mahli objects to the following

explanation on the basis that it constitutes inappropriate speculation outside of Dockens'

area of expertise:

> It is not uncommon for brand name hotel franchises to require replacement reserves be maintained to fund property improvement programs, which are necessary to stay competitive in the market and ensure quality promotion within the franchise brand.  Typically, a percentage of revenue is maintained in a replacement reserve account to provide funding of such improvement programs.  We found no evidence on the Statements of Financial Condition . . . that a replacement reserve exists, whether required or not.

(Dockens Rep. [65-3] at p. 6.)  The Court finds Mahli's objection to this explanation well

taken.

Dockens testified at deposition that he did not know whether replacement

reserves were required at the subject Hotel.  (*See* Dockens Dep. [64-4] 66:10-18.)

Although Dockens thought it would be prudent for a hotel owner to have reserves

available for wear and tear, Dockens acknowledged that he had neither personally

provided accounting services for any hotel nor taken any courses in hotel accounting.

(*See* Dockens Dep. [64-4] 66:19-67:17.)  Dockens also had "no idea" of the percentage

of hotels in the United States that carried replacement reserves.  (*See* Dockens Dep.

[64-4] 68:4-7.)  Based on this testimony, the Court is unconvinced that Dockens' above-

quoted explanation "is genuinely scientific, as distinct from being unscientific speculation

offered by a genuine scientist." *Moore*, 151 F.3d at 278 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).  Mere subjective beliefs and unsupported speculation fail to pass muster under Rule 702's reliability prong.  *See Johnson*, 685 F.3d at 459.

In sum, Dockens' replacement reserves explanation will be excluded from the jury at trial.  Mahli's remaining objections to Dockens' proposed testimony are denied.  Those objections not specifically addressed above go to "the weight to be assigned to the testimony, not its admissibility."  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *Daubert*, 509 U.S. at 596).

### C.      Mahli's Motion to Strike LaHatte [66]

Admiral retained Trinity Insurance Services ("Trinity") to provide adjusting services with respect to the subject loss.  Trinity, in turn, hired Joseph LaHatte, an independent adjuster, to assist with this task.  Admiral has designated LaHatte as an expert witness, who is expected to provide testimony regarding the estimated replacement cost and actual cash value for damage to the Hotel.  Per his curriculum vitae, LaHatte is a licensed adjuster in six states, including Mississippi, and has approximately twenty-five years of experience in the insurance field with an emphasis on property claims.

Mahli initially argues that LaHatte's opinions regarding depreciation and clean-up costs should be disregarded because they rest on speculation and LaHatte is not an expert on debris removal, demolition, or the depreciation of commercial buildings.  The Court overrules these objections.  An expert's knowledge, training, or experience in one field may permit her to provide opinions concerning a related discipline.  *See Liu*, 716

F.3d at 159, 168-69.  "[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."  *Id.* (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).  Mahli does not dispute that LaHatte is a licensed adjuster in six states or that LaHatte has many years of adjusting experience. The Court finds that LaHatte's qualifications and experience as an adjuster, i.e., one who "investigates or adjusts losses on behalf of . . . an insurer,"[7] enable him to provide expert testimony regarding common components of a property loss claim, such as depreciation and debris removal.  *Cf. Palm Bay Yacht Club Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23685-CIV, 2012 WL 1345317, at *3 (S.D. Fla. Apr. 18, 2012) (holding that the witness's experience as an independent adjuster in analyzing property insurance losses sufficiently qualified him to opine as to whether certain building components should be repaired or replaced).  Furthermore, LaHatte's reliance on his judgment and experience in determining depreciation (by visually inspecting the premises, while considering its age and condition)[8] and certain clean up costs (by estimating the number of hours needed to clean a room and the number of dumpsters required for debris removal)[9] fails to render his opinions unreliable for Rule 702 purposes.  *Cf. Mason v. Tex. Farmers Ins. Co.*, No. 4:09-CV-03134, 2011 WL 10845765, at *2 (S.D. Tex. Dec. 1, 2011) (finding that nothing in a licensed adjuster's

---

[7] Miss. Code Ann. § 83-17-401(a) (defining "adjuster").

[8] (*See* LaHatte Dep. [66-4] 87:15-89:16, 96:2-6.)

[9] (*See* LaHatte Dep. [66-4] 94:16-95:7, 103:18-104:22, 109:1-11.)

methodology for determining repair costs, including visually inspecting the property and documenting the damage, cast doubt on the resulting opinion's reliability); *Vigilant Ins. v. Sunbeam Corp.*, 231 F.R.D. 582, 587-88 (D. Ariz. 2005) (rejecting a reliability challenge to an expert's methodology for evaluating personal property damages, which included his reliance on "general knowledge," given the absence of any precise method or science for valuing such claims; and, finding that the expert's possible failure to consult independent sources as to fair market value went "to the weight of his testimony rather than its admissibility").

Mahli further argues that LaHatte should be precluded from testifying because his report contains mistakes and unexplainable figures.  LaHatte utilized Xactimate, a computer program, in determining the replacement costs for damages to the Hotel.  Per LaHatte's written report, Xactimate "is the standard replacement cost estimating software used by adjusters in the insurance repair industry."  (LaHatte Rep. [66-3] at p. 1.)  Several district court opinions support this assertion.  *See, e.g.*, *Emmanuel Baptist Church v. State Farm Fire & Cas. Co.*, No. CIV-11-594-D, 2012 WL 6084497, at *3 (W.D. Okla. Dec. 6, 2012) ("Xactimate satisfies the *Daubert* requirement that the proposed expert utilize a sound methodology."); *Mason*, 2011 WL 10845765, at *2 (noting that Xactimate is a standard tool for estimating damages in the insurance industry); *Denley v. Hartford Ins. Co. of the Midwest*, No. 07-4015, 2008 WL 2951926, at *4 (E.D. La. July 29, 2008) (same); *Shadow Lake Mgmt. Co. v. Landmark Am. Ins. Co.*, No. 06-4357, 2008 WL 2510121, at *4 (E.D. La. June 17, 2008) ("[T]he Xactimate methodology is reliable under *Daubert* . . . .").

Generally, errors made by an expert witness in calculating or inputting data while utilizing a *Daubert*-compliant computer program fail to justify the exclusion of his or her testimony.  *See In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 461-62 (W.D. Ky. 2011) (citations omitted).  "[M]iscalculations and inaccuracies . . . go to the weight of the evidence and not its admissibility."  *Id.* at 462 (quoting *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005)).  Accordingly, courts have found alleged errors, inaccuracies, or deficiencies associated with the calculation of damages under Xactimate to be insufficient to warrant the exclusion of expert testimony.  *See Emmanuel Baptist Church*, 2012 WL 6084497, at *5; *Mason*, 2011 WL 10845765, at *2; *Shadow Lake Mgmt. Co.*, 2008 WL 2510121, at *4.  These authorities persuasively militate against the exclusion of LaHatte's testimony based on the Xactimate-related errors highlighted by Mahli.  Mahli may attack LaHatte's facts and figures at trial via "[v]igorous cross-examination" and the "presentation of contrary evidence," the traditional means of challenging admissible evidence.  *See Daubert*, 509 U.S. at 596.  LaHatte's inability to explain a few figures in his 288-page report is also a matter for the jury to consider in determining the weight of his testimony.

Mahli further argues that LaHatte should be excluded because he could not explain the "how and why" of his report at his deposition.  This argument focuses on the following deposition testimony:

Q.    And, once again, would that just be an average or an estimate?  Do you have any idea how they -- do you have any idea of how they calculate the cost of labor?

A.    No.  It's just in the program [Xactimate].  They allow X amount of hours per whatever you're doing in that particular room or area or whatever.  I

> don't know how they get the number.  I don't know, but it's all in that
> program.

(LaHatte Dep. [66-4] 17:4-12.)  The Court finds the following deposition testimony also

pertinent to the issue of whether LaHatte can adequately explain the bases for the

replacement cost and actual cash value estimates listed in his report:

Q.    Can you explain to me what the Xactimate service --

A.    Xactimate is a computer program that almost -- the industry standard.
      Most, if not all, adjusters use Xactimate.  What they do -- what it is, it's a
      program that you use to establish damages or values.  And what it is, it's a
      multi-subscription.  And it's by zip code in the area, meaning it updates the
      prices every month based on this area.  Whatever the zip code is, they
      plug in the zip code, and they'll go around and whatever.  The price of
      sheetrock is X amount this month, the next month it's this.  But they base
      it on whatever zip code you're in.
          So when I go into an area, I can plug in a zip code.  It will tell me
      how much sheetrock is in this area or how much roofing shingles are in
      this area.  So they have all those numbers in there so I don't have to go
      find them.  They're already in there for me.

      . . . .

A.    Most adjusters -- there's another program called Symbility, but most --
      most adjusters and a lot of contractors now use Xactimate.  It's a
      subscription service, and like I said, it updates every month.  It has the -- it
      will have the tax code for this area, sales tax.  It will have overhead and
      profit based on the area, price of materials, price of labor.  Price of
      shingles, you know, when I do a roofing claim.  It will give me how much a
      bundle of shingles cost in this area.

      . . . .

A.    Too much.  And you can do -- in Xactimate, you can do -- like for me to do
      this hotel, like I think its seventy-nine rooms, I can do one room, okay, and
      create a macro.  I can plug that into each room and that will give me a
      price to redo each room, you know.  If the damage is the same in each
      one of the rooms, then I can just plug that in there and make little
      adjustment to it, you know.

(LaHatte Dep. [66-4] 14:3-21, 15:6-15, 26:7-14.)  The totality of LaHatte's deposition testimony regarding this subject matter supports LaHatte being able to explain the "how and why" of his opinions to the jury at trial.  *See United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (providing that questions regarding the bases or sources of an expert opinion generally go toward the weight of the testimony, as opposed to its admissibility, and are properly left for the jury to consider) (citation omitted).

Finally, the Court rejects Mahli's objection to LaHatte's testimony on the basis that he failed to rely on a uniform standard and "simply plugged data into a computer and relied upon the information the computer spat out."  (Pl.'s Mem. in Supp. of Mot. to Strike LaHatte [67] at p. 9.)  This summary characterization of LaHatte's work fails to persuade the Court that the aforementioned district courts got it wrong in allowing experts to testify based on their utilization of Xactimate, a reliable methodology, in estimating insurance losses.  *See Emmanuel Baptist Church*, 2012 WL 6084497, at *3; *Mason*, 2011 WL 10845765, at *2; *Denley*, 2008 WL 2951926, at *4; *Shadow Lake Mgmt. Co.*, 2008 WL 2510121, at *4.  Mahli's critique of LaHatte's method of calculating damages may prove persuasive to the jury, but it does not justify exclusion under Rule 702.

Mahli's Motion to Strike LaHatte [66] will be denied for each of the above-discussed reasons.

### D.    Admiral's Motion to Exclude Agosti [70][10]

---

[10]  Mahli's response to this motion requests an evidentiary hearing.  The Court exercises its discretion to decide the motion based on the written submissions offered

Mahli has designated John Agosti as an expert in the field of fire cause and origin.  On January 4, 2015, Agosti submitted his written report regarding the subject fire.  (*See* Agosti Rep. [70-2].)  Agosti describes his report as "preliminary" in nature and states that his "investigation was based on the review of very limited records and photographs," and that he "was not afforded the opportunity to inspect the fire scene or fire building immediately after the fire."  (Agosti Rep. [70-2] at p. 2.)  Agosti offers the following opinions pertinent to the subject motion:

**Opinion 1:**

Based on scientifically accepted and well documented indicators and the information provided to me at this time, it is my opinion, within a reasonable degree of fire science certainty, that the area of <u>origin</u> described as "the 3rd level in separate and multiple locations" as reported by Gary Jones[11] in the EFI Global report is a feasible hypothesis.  However, there is insufficient evidence and documentation in the Jones' report to conclusively rule out other feasible hypothesis as to origin or origins for this fire.  There is insufficient information and documentation in Mr. Jones' report to determine if he followed the scientific method to arrive at his opinions as required by NFPA 921.

**Opinion 2:**

Based on scientifically accepted and well documented indicators and the information provided to me at this time, it is my opinion, within a reasonable degree of fire science certainty, that the fire <u>cause</u> opinion described as "Evidence indicates ignition resulted from an open flame heat source. Evidence indicates first fuel ignited consisted of gasoline vapors followed by available combustibles.  Events bringing ignition and fuel together includes intentional human involvement.  The cause of the fire is classified incendiary." of Gary Jones as stated in the EFI Global report is a feasible hypothesis.  However, there is insufficient evidence and documentation in the Mr. Jones' report to conclusively rule out other feasible hypothesis as to cause or

---

by the parties.  *See Liu*, 716 F.3d at 167 n.19; *Clay*, 215 F.3d at 667.

[11] Admiral has designated Jones to offer expert opinions regarding the cause and origin of the subject fire.

causes for this fire.  There is insufficient information and documentation in Mr. Jones' report to determine if he followed the scientific method to arrive at his opinions as required by NFPA 921.

**Opinion 3:**

Based on scientifically accepted and well documented indicators and the information provided to me at this time, it is my opinion, within a reasonable degree of fire science certainty, that I have not been provided sufficient information to scientifically conduct a proper fire origin, cause and responsibility investigation into the subject fire loss. . . .  Based on the limited information available to us at the time of this report my opinion as to the fire's origin, cause and responsibility are undetermined at this time. . . .

(Agosti Rep. [70-2] at pp. 10-11.)

Admiral argues that Agosti's opinions are unreliable and inadmissible because they are not based on sufficient facts or data.  This argument centers on Agosti's admission that he was not furnished with "sufficient information to scientifically conduct a proper fire origin, cause and responsibility investigation . . . ."  (Agosti Rep. [70-2] at pp. 4, 10.)  Mahli's opposition to the motion primarily faults others for the lack of information available to Agosti regarding the fire.  For example, Mahli asserts that governmental reports are unavailable due to ongoing investigations.  Mahli further complains that the litigation process and Admiral's claim denial resulted in Agosti investigating the scene of the fire years after the investigation by Jones.

The record in this case and Agosti's report indicate that Mahli contacted him on December 1, 2014, approximately one month prior to the expiration of Mahli's expert designation deadline of January 6, 2015.  Mahli offers no explanation as to what, if anything, prevented it from contacting Agosti in the approximate seven-month period between the filing of the Complaint [1] and December 1.  Mahli's opposition to Admiral's request for exclusion posits that Agosti investigated the fire scene on March 24, 2015.

-20-

The Court finds it reasonable to presume that Agosti would have had a better chance of visiting the scene as part of his investigation prior to Mahli's expert witness designation deadline had Agosti been contacted earlier in the litigation. It thus appears that Mahli shoulders at least some of the blame for the lack of information available to Agosti at the time of his "preliminary report." (Agosti Rep. [70-2] at p. 2.)

Moreover, Mahli's arguments regarding the inadequacy of information available to Agosti are out of place in response to a request for the exclusion of expert testimony under Rule 702. These arguments would be more appropriately asserted in support of a request for an extension of time to designate experts. Of course, such a request must be made by separate motion given the expiration of Mahli's expert designation deadline months ago. *See* Fed. R. Civ. P. 6(b)(1)(B) (providing that a party must file a motion to obtain relief from an expired deadline); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) ("[A]ny *post*deadline extension must be upon motion made, and is permissible only where the failure to meet the deadline was the result of excusable neglect.") (citation and internal quotation marks omitted). Mahli's Response to Defendant's Motion to Exclude Agosti [82] does not qualify as a motion. *See* L.U.Civ.R. 7(b)(3)(C). More important, Mahli's complaints as to Agosti's limited access to information in no way discharge its duty to "prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002) (citation omitted). Mahli cites no authority favoring the recognition of an exception to either Rule 702's reliability prong or relevance prong whenever an expert witness lacks "sufficient information to scientifically conduct a proper" examination. (Agosti Rep. [70-2] at p. 10.)

Mahli's complaint that Admiral chose to lock Agosti in to the information stated in his report by not deposing him is similarly deficient.  The absence of deposition testimony from Agosti explaining why "he did not have enough information to conduct a proper investigation" also fails to persuade the Court that Agosti's opinions meet the requirements of Rule 702.  (Pl.'s Resp. to Mot. to Exclude Agosti [82] at p. 3.) Moreover, Mahli was required to produce a complete statement of all of Agosti's opinions, including the bases and reasons for them and the facts or data considered by Agosti in forming the opinions, notwithstanding the existence of any discovery request from Admiral.  *See* Fed. R. Civ. P. 26(a)(2)(B); L.U.Civ.R. 26(a)(2).  Neither the expert witness disclosure requirements under the Federal Rules of Civil Procedure nor the standards for the admission of expert testimony under the Federal Rules of Evidence are obviated by an opponent's decision not to take an expert deposition.

Ultimately, the Court exercises its gatekeeping obligation under *Daubert* to exclude Agosti's opinions because they will not assist the jury at trial.  *See* Fed. R. Evid. 702(a).  In "Opinion 1" and "Opinion 2" Agosti essentially states that he lacks sufficient information to conclude whether the fire was incendiary, where the fire started in the Hotel, and whether Jones followed the scientific method in reaching his conclusions regarding the fire.  Agosti's non-opinion regarding the cause of the fire appears to be irrelevant since Mahli's summary judgment briefing does "not dispute[] that the fire was incendiary in nature."  (Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 13.)  Under Rule 702, expert testimony must be relevant "in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine *a fact in issue*."  *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (emphasis added; citation

omitted).  Agosti's opinions are also too indeterminate to aid the trier of fact.  "[A] trial court may exclude expert testimony that is imprecise and unspecific or whose factual basis is not adequately explained."  *Smith v. Johnson & Johnson*, No. 3:08cv245, 2011 WL 3876997, at *5 (S.D. Miss. Aug. 31, 2011) (quoting *S. Grouts & Mortars v. 3m Co.*, 575 F.3d 1235, 1245 (11th Cir. 2009)), *aff'd,* 483 Fed. Appx. 909 (5th Cir. 2012).  At best for Mahli, a jury hearing the aforementioned opinions could surmise that it is possible, but not necessarily probable, that Jones did not follow the scientific method; that the fire was not incendiary; and, that the fire did not start in the third floor of the Hotel.  Mere possibilities are not the stuff of competent expert testimony.  *See Wu v. Miss. State Univ.*, No. 1:13cv2, 2014 WL 5799972, at *12 (N.D. Miss. Nov. 7, 2014) ("Statements frequently appear in the case law that for an expert to testify that . . . certain events or substances 'might' or 'could' have caused a specified result, are of little help to a fact-finder and therefore should be excluded.") (quoting 6 *Jones on Evidence* § 42:32 (7th ed.)); *Hammond v. Coleman Co.*, 61 F. Supp. 2d 533, 538-39 (S.D. Miss. 1999) (excluding proposed expert testimony that only discussed possibilities), *aff'd*, 209 F.3d 718 (5th Cir. 2000).  The non-determination stated in Agosti's "Opinion 3" would also not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).

Based on the foregoing, Agosti's above-quoted opinions will be excluded from the jury at trial.

## II.     Motions for Summary Judgment

### A.     Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, 'the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.'"  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004)).  However, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  If the movant meets his burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial.  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to

-24-

be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citing *Sec. & Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).  Where cross-motions for summary judgment are before a court, each motion is to be considered independently with the facts and resulting inferences viewed in favor of the nonmovant.  *See Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (citation omitted).

### B.    Mahli's Motion for Summary Judgment [68]

#### 1.    Evidentiary Objections

The Court initially addresses Mahli's objections to the affidavits of Dorothy Keenan and Richard Tubertini.  Keenan testified as Admiral's Rule 30(b)(6) representative at deposition and handled the file for Mahli's insurance claim.  (*See* Keenan Dep. [68-11] 8:17-22.)  Tubertini is one of the attorneys representing Admiral in this litigation.  Tubertini also provided legal services to Admiral during its investigation of the claim, such as taking Singh's EUO.  (*See* Keenan Dep. [68-11] 14:19-15:1, 19:21-20:8; Singh EUO [68-3].)  Admiral submitted affidavits executed by Keenan and Tubertini in support of its opposition to Mahli's request for summary judgment.  (*See* Keenan Aff. [85-5]; Tubertini Aff. [85-16].)  Mahli objects to Tubertini's affidavit on the basis that it contains inadmissible hearsay, and to both Tubertini and Keenan's affidavits on the grounds that they contradict prior sworn deposition testimony.

### a.     Keenan Affidavit [85-5]

At her deposition on March 26, 2015, Keenan testified that Admiral relied on the advice of counsel that Mississippi only requires civil arson to be proven by a preponderance of the evidence in denying Mahli's claim.  (*See* Keenan Dep. [68-11] 66:21-67:16, 70:11-71:23.)  Keenan also indicated that she understood there was a difference between a preponderance of the evidence standard and a clear and convincing standard.  (*See* Keenan Dep. [68-11] 71:24-73:2)  Keenan's April, 2015 affidavit states in pertinent part:  (i) on June 21, 2013, Admiral's legal counsel advised it that under Mississippi law, an insurer may deny a claim for coverage "where there is clear evidence of arson by the insured"; (ii) on July 9, 2013, Admiral relied on the advice of counsel "and the clear evidence of arson by the insured" in denying Mahli's claim; (iii) a letter sent by Admiral's counsel to Mahli's counsel on August 7, 2013, contains Admiral's reasons for denying the claim and states that the "denial was based on the 'clear evidence' of arson by the insured"; (iv) on June 24, 2013, Keenan mistakenly used the terms "preponderance of the evidence," as opposed to "clear evidence," in preparing a Claims Committee Form; and (v) Keenan reviewed the Claims Committee Form in preparing for her deposition, and thus, "mistakenly testified . . . that (1) counsel advised Admiral the applicable standard was 'preponderance of the evidence' and (2) that I applied the 'preponderance of the evidence' standard in denying the Claim." (Keenan Aff. [85-5] at ¶¶ 7, 10, 11-13.)

Mahli argues that Keenan's affidavit cannot be used to defeat its summary judgment motion since the affidavit directly refutes her prior sworn testimony.  It is well accepted in the Fifth Circuit that a "nonmovant cannot defeat a motion for summary

judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996) (holding that the plaintiff could not create a fact issue by utilizing an affidavit that contradicted, as opposed to supplemented, prior sworn testimony where the plaintiff did not claim that the witness misspoke in his deposition) (citations omitted). However, the Fifth Circuit has also held that in ruling on summary judgment, a trial "court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) (citations omitted).  A party's conflicting testimony generally gives rise to an issue of credibility and it is the jury's role to weigh testimony and resolve credibility issues.  *See id.* at 893-95; *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 608, 612 n.3 (5th Cir. 2009) (reversing the trial court's grant of summary judgment and noting that the "very fact . . . the magistrate judge questioned Netterville about perceived discrepancies between her deposition and affidavit tends to indicate that the . . . judge was weighing evidence and resolving conflicts in the summary judgment evidence, and failing to give the plaintiff the benefit of all favorable inferences that could be drawn").

Clearly, there is a conflict between Keenan's deposition testimony and subsequent affidavit regarding the standard for proving arson that Admiral considered in denying Mahli's claim.  However, that conflict is not "without explanation." *S.W.S. Erectors, Inc.*, 72 F.3d at 495.  In *S.W.S. Erectors*, the plaintiff did not contend that the subject witness misspoke in his deposition and there was no explanation as to why the

witness waited eighteen months to correct his testimony.  Here, Keenan executed her affidavit less than one month after her deposition, and she acknowledges mistakenly testifying regarding the preponderance of the evidence standard.  Keenan's affidavit testimony concerning Admiral's reliance on the advice of counsel and "clear evidence of arson" in denying Mahli's claim is also supported by the aforementioned letter from Admiral's counsel to Mahli's counsel, which was submitted close in time to the claim denial and states that Admiral's investigation "produced clear evidence of all three elements" required to establish civil arson.  (Keenan Aff. [85-5 at ECF p. 4].)  Although Keenan's explanation for testifying at deposition regarding the wrong standard is not particularly pellucid, the Court declines to judge her credibility at the summary judgment stage and hold that her "affidavit constitue[s] a sham."  *Kennett-Murray Corp.*, 622 F.2d at 894; *see also Chevron Phillips Chem. Co.*, 570 F.3d at 612 n.3.  The discrepancies between Keenan's deposition testimony and subsequent affidavit give rise to a fact issue, which may or may not prove material.  The Court thus overrules Mahli's objection to Keenan's affidavit.

### b.    Tubertini Affidavit [85-16]

Tubertini's affidavit states that Admiral retained his law firm, Hailey McNamara Hall Larmann & Papale, LLP ("HMHLP"), on October 23, 2012, to provide legal assistance relating to Mahli's insurance claim.  (*See* Tubertini Aff. [85-16] at ¶ 5.)  Tubertini is the primary person at HMHLP, who provided services to Admiral.  (*See* Tubertini Aff. [85-16] at ¶ 6.)  The subject affidavit further provides that Tubertini interviewed or consulted with several individuals concerning the claim, including

Christine Moore, Ariel Lampkin, and Donna Demo,[12] and attributes certain statements to those individuals.  After describing several communications, Tubertini concludes:  "[H]e factored all of the information obtained from . . . [the aforementioned individuals] into his overall assessment of the facts gathered during the investigation of the Claim and based on the totality of the facts, advised Admiral there was clear circumstantial evidence that Mr. Singh burned the insured property."  (Tubertini Aff. [85-16] at ¶ 31.)

Mahli argues that Tubertini's statements regarding his interviews of Ariel Lampkin and Christine Moore are inconsistent with Keenan's deposition.  Keenan testified as follows regarding Lampkin:

> Q.    Okay.  Now, at what point in time was Ariel interviewed by you all?
>
> A.    I believe the investigator asked her questions initially in the loss.
>
> Q.    Which investigator?
>
> A.    Our investigator, the adjuster.

(Keenan Dep. [68-11] 25:12-17.)  The following exchange at Keenan's deposition concerned Moore:

> Q.    Did you all make any attempt to run them down?
>
> A.    Yes, we did.
>
> Q.    And you didn't find them?
>
> A.    No, we could not find them.

---

[12] Ariel Lampkin was the front desk clerk at the Hotel at the time of the fire.  (*See* Singh EUO [68-3] 113:1-3.)  Donna Demo was the front desk manager at that time.  (*See* Singh EUO [68-3] 52:1-10.)  Christine Moore, an employee at a nearby McDonald's, reportedly saw smoke coming from the third story of the Hotel just before 9:00 a.m.  (*See* Jones Rep. [68-12 at ECF p. 15].)

Q.      Do you remember who they were?

A.      I would have to look and see.  No.

(Keenan Dep. [68-11] 61:13-19.)

Assuming, without deciding, that both Tubertini and Keenan can be considered to speak for Admiral for purposes of the rule stated in *Albertson* and *S.W.S. Erectors*, the Court finds that Tubertini's identification of himself as the individual interviewing Ariel Lampkin clarifies or supplements Keenan's above-quoted deposition testimony and fails to give rise to a direct contradiction necessitating the striking of his affidavit.  "[E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence."  *Kennett-Murray Corp.*, 622 F.2d at 894 (citation omitted).  As to Christine Moore, Admiral contends that "Keenan's vague, half-remembered testimony does not clearly conflict with Tubertini's affidavit statements about interviewing Moore.  At most, Keenan forgot Tubertini located and interviewed Moore or that Moore was one of the 'McDonald's people.'"  (Def.'s Surrebuttal [98] at p. 7) (internal citation omitted).  The Court notes several instances at Keenan's deposition where she could not recall specific matters relating to the insurance claim, and could not refresh her recollection because she failed to bring her file to the deposition.  (*See* Keenan Dep. [68-11] 17:5-18:1, 27:24-28:4, 54:2-55:4, 57:11-19, 85:4-8.)  Thus, Admiral's explanation for the conflict between Keenan and Tubertini's statements regarding Moore is not beyond the realm of reason.  Viewing the above-discussed evidence in Admiral's favor, this conflict amounts to a credibility issue for the finder-of-fact to resolve.  *Cf. Republic Fire & Cas. Ins. Co. v. Azlin*, No. 4:10cv37, 2012 WL 4482355, at *4 (N.D. Miss. Sept. 26, 2012) (denying a motion to strike the insured's

affidavit in ruling on summary judgment since any contradictions between the affidavit and a prior EUO constituted a jury issue).

Mahli further objects to Tubertini's affidavit, "particularly as it pertains to the alleged statements of Ariel Lampkin and Donna Demo," pursuant to Federal Rule of Civil Procedure 56(c)(2).  (Pl.'s Rebuttal [94] at ¶ 9.)  This Rule states that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Mahli asserts that the subject statements cannot be presented into evidence because they constitute hearsay. Admiral argues that Lampkin and Demo's statements referenced in Tubertini's affidavit do not constitute hearsay because they have not been offered to prove the truth of the matters asserted.  Rather, the "statements are offered to prove what was said to Tubertini and thus what Admiral relied on in making the decision to deny the claim." (Def.'s Surrebuttal [98] at p. 8.)  Admiral's argument is supported by analogous authorities and well taken.  *See Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 306 (5th Cir. 2013) (rejecting an evidentiary challenge to unsworn statements attached to an affidavit that were not offered to prove the truth of the matter asserted, but instead, were submitted to show what the plaintiff's co-workers told her employer and the employer's reliance on the statements for its termination decision); *Brauninger v. Motes*, 260 Fed. Appx. 634, 636-37 (5th Cir. 2007) (same reasoning and result as to statements referenced in reports and letters regarding an employer's investigation); *Cowen v. Allstate Ins. Co.*, No. 11-118, 2011 WL 5869449, at *4 (E.D. La. Nov. 22, 2011) (overruling the plaintiff's hearsay objection as to statements in the insurance claim file that were offered "to show that Allstate was aware of the statements and therefore had

a reasonable basis for its arson investigation, regardless of whether the statements were true").  Thus, Mahli's objections to Tubertini's affidavit are also overruled.

### 2.      Declaratory Judgment (Breach of Contract)

Mahli argues that there is no genuine issue as to any material fact precluding the entry of a declaratory judgment finding that Admiral must prove by clear and convincing evidence that the fire loss was attributable to an excluded peril; that Admiral cannot meet its burden; that Admiral should have tendered the limits of the Policy when it became apparent that the burden could not be met; and, that Admiral breached its Policy obligations to Mahli.  Central to all of these requested findings is the issue of whether Admiral owes coverage to Mahli for the fire loss.  If it does, Admiral will be liable to Mahli for breach of contract since it has not tendered any proceeds to Mahli under the Policy.  *See Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (¶ 48) (Miss. 2014) (providing that an insurance policy is a contract) (citation omitted).  The Court finds that fact issues as to the existence of coverage negate Mahli's request for judgment as a matter of law on its declaratory judgment cause of action.

"[W]ilful incendiarism by an insured is a defense to the insurer's liability." *McGory*, 527 So. 2d at 634 (citations omitted).  "[T]he burden rests upon an insurer claiming civil arson to prove it, and this is so whether it be asserted defensively in an action by the insured on a policy or, . . . in an action by the insurer for declaratory judgment."  *Reed v. Nationwide Mut. Fire Ins. Co.*, No. 3:06cv365, 2007 WL 3357140, at *1 (S.D. Miss. Nov. 9, 2007) (quoting *McGory*, 527 So. 2d at 636).  Admiral must prove the following three elements by clear and convincing evidence to succeed on its

civil arson defense and defeat Mahli's claim for coverage:  "(1) an incendiary fire; (2) motive of the insured to destroy the property; and (3) evidence that the insured had the opportunity to set the fire or to procure its being set by another."  *GuideOne Mut. Ins. Co. v. Hall*, No. 1:06cv315, 2009 WL 198304, at *1 (N.D. Miss. Jan. 26, 2009) (citing *McGory*, 527 So. 2d at 634-36).  Arson may be proven circumstantially since intentional burning is rarely witnessed.  *Guideone Mut. Ins. Co. v. Rock*, 1:06cv218, 2009 WL 1854452, at *6 (N.D. Miss. June 29, 2009) (citing *McGory*, 527 So. 2d at 634-35).

Mahli has not demonstrated an absence of evidentiary support for the conclusion that the subject loss was caused by an incendiary fire.  *See Cuadra*, 626 F.3d at 812.  In fact, Mahli does "not dispute[] that fire was incendiary in nature."  (Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 13.)  Therefore, the Court need only consider whether genuine issues for trial exist on the motive and opportunity elements of Admiral's civil arson defense.

Admiral argues that Mahli's financial condition in the months leading up to the fire gave it the motivation to destroy the property.  Admiral cites the following particulars from Singh's EUO in support of this argument:  (i) as of June 16, 2012, Mahli was behind on its mortgage payments in the amount of $34,721.46;[13] (ii) as of September, 2012, Mahli had recovered some, but it was still behind on its mortgage;[14] and (iii) approximately one month before the fire, Mahli was behind on various payments, including its account with Biloxi Paper and the franchise fee it owed Howard Johnson.

---

[13] (*See* Singh EUO [68-3] 59:12-16.)

[14] (*See* Singh EUO [68-3] 85:24-86:20.)

(*See* Singh EUO [68-3] 80:17-81:7.)  Admiral further posits that in January of 2013, it

learned that Mahli had never paid its property taxes for 2011, and Mahli owed back

taxes exceeding $25,000.  (*See* Tax Records [85-19].)   Admiral also relies on a

September 27, 2012 e-mail from Sandeep Toor (aka Sandeep Kaur), Singh's daughter,

to Marty Desai, Mahli's mortgagee, stating in pertinent part:

> I know you are aware that business is not doing that well. . . .  [W]e have
> decided to sell the hotel.  The business is not good and because it is not
> being managed properly it is suffering. . . . [C]urrently our financial situation
> is really bad and we are having hard time even paying the electricity bill.

(Sandeep Dep. [85-8 at ECF p. 4].)[15]  The Court also takes note of Steven Dockens'

opinion that there were substantial doubts as to Mahli's ability to continue operating as a

going concern prior to the fire based on such factors as recurring operating losses,

working capital deficiencies, and negative cash flows from operations.  (*See* Dockens

Dep. [64-4] 55:15-56:12, 78:13-25.)  Comparable circumstances have been found to

support the existence of clear and convincing evidence of an insured's motivation to

commit arson.  *See Hall*, 2009 WL 198304, at *3 (citing evidence of the insured's

financial troubles, including her owing back taxes, bouncing checks, and making late

mortgage payments in the months preceding the fire); *McGory*, 527 So. 2d at 636

(finding that the insured's long overdue debts totaling approximately $50,000 gave him

the incentive to commit arson and seek the resulting insurance proceeds).

---

[15] Sandeep authenticated the e-mail at her deposition.  (*See* Sandeep Dep. [85-8]
21:20-22:3.)  Singh testified that Sandeep worked at the Hotel and was responsible for
completing various paperwork.  (*See* Singh EUO [68-3] 50:5-51:23.)  Sandeep was in
India at the time of the fire, and had been away from the Hotel since about August of
2012.  (*See* Singh EUO [68-3] 51:7-16; Sandeep Dep. [85-8] 21:2-4.)

In *Hall*, the district court found the insured's presence at the scene of the fire less than thirty minutes before the fire department was called to support the opportunity element of the insurer's civil arson defense. 2009 WL 198304, at *3; *cf. Reed*, 2007 WL 3357140, at *2 (noting that the plaintiff conceded the insurer had a legitimate basis for determining that she had the opportunity to start the fire in part because she had left the property approximately twenty to thirty minutes prior to the fire being reported). Admiral points to similar facts in arguing that Singh had the opportunity to start the fire that damaged the Hotel. The fire was first reported to a local fire department at approximately 11:45 a.m. (*See* Jones Rep. [68-12 at ECF p. 67].) Singh has testified that he arrived at the Hotel at 11:00 a.m. on the day of the fire, and was present when the fire department later arrived on the scene. (*See* Singh EUO [68-3] 112:12-14, 157:23-158:6.)

Viewing the above-discussed evidence and resulting inferences in Admiral's favor, the Court finds genuine issues for trial on the motive and opportunity elements of Admiral's arson defense. Mahli's arguments in support of summary judgment fail to negate this conclusion. Mahli's summary judgment briefing largely focuses on alleged inadequacies and failures in Admiral's investigation of the insurance claim. The following excerpt from Mahli's memorandum brief summarizes most of its complaints:

> Admiral did not interview any of the employees present on the day of the fire. Admiral did not contact Mahli's accountant, Dan Burton, who would be well-versed in Mahli's financial situation. Admiral did not follow up on Mr. Singh's testimony as to who may have burnt down the hotel. Admiral did not give any credence to the claim that Mr. Singh believed himself to be uninsured on the date of the fire.

(Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 14.) Questions regarding the adequacy of

Admiral's investigation do not erase the above-discussed facts regarding "motive" and "opportunity" from the summary judgment record. To the extent a more thorough investigation would have uncovered different facts militating against Admiral's civil arson defense, the Court is prohibited "from weighing the evidence" in ruling on summary judgment. *Jackson v. Frisco Indep. Sch. Dist.*, 789 F.3d 589, 594 (5th Cir. 2015) (citation omitted); *see also Chevron Phillips Chem. Co.*, 570 F.3d at 608, 612 n.3. A jury, with its ability to listen to live testimony and balance evidence, would be the appropriate entity to decide the sufficiency of Admiral's allegation of intentional burning.[16]

### 3.   Gross Negligence/Bad Faith/Punitive Damages

Mahli argues that the issue of punitive damages should be submitted to the jury because Admiral lacked an arguable basis for denying the insurance claim and Admiral's denial resulted from its gross negligence in investigating the claim. In order to recover punitive damages for the bad-faith denial of an insurance claim, a plaintiff "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either

---

[16] Mahli's request for a declaratory judgment does not eliminate the availability of a jury trial on this issue. The Complaint includes a jury trial demand, and Mahli avers that it "is entitled to receive a trial by jury on all issues triable" under count one of the Complaint. (Compl. [1] at pp. 1, 5.) Furthermore, it is beyond purview that declaratory judgment actions are neither equitable nor legal and that the nature of the underlying dispute controls whether a jury trial is available. *See, e.g.*, *Simler v. Conner*, 372 U.S. 221, 223, 83 S. Ct. 609, 9 L. Ed. 2d 691 (1963); *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968); 9 Charles Alan Wright et al., *Federal Practice and Procedure* § 2313 (3d ed.). The Court finds the resolution of an insurer's defense to liability based on civil arson to be legal in nature. *Cf. Polk*, 897 F.2d at 1349 & n.2 (providing that the jury's verdict in favor of the defendant insurer implied that the jury had decided the insured committed arson); *Reed*, 2007 WL 3357140, at *4 ("Whether Nationwide is able to sustain its burden to prove arson is an issue that a jury will decide.").

in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citation omitted).  Recovery on the underlying breach of contract claim, i.e., a determination of coverage, is also a condition precedent to the insured obtaining an award of punitive damages.  *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (citing Jeffrey Jackson, *Mississippi Insurance Law and Practice* § 13:2 (2007)); *cf.* Miss. Code Ann. § 11-1-65(1)(c) (stipulating that the jury may consider awarding punitive damages only if compensatory damages are first rendered).  The "insured must be able to demonstrate that the insurer in fact owed the claim" to prevail on his cause of action for bad faith.  Jeffrey Jackson & D. Jason Childress, *Mississippi Insurance Law and Practice* § 13:3 (2015) (collecting cases, including *Stubbs v. Mississippi Farm Bureau Casualty Insurance Co.*, 825 So. 2d 8, 13 (¶ 18) (Miss. 2002), where the Mississippi Supreme Court found there could be no bad-faith denial of an insurance claim in the absence of coverage).

Mahli bears the burden of proving that Admiral acted in bad faith in denying its insurance claim.  *See Broussard*, 523 F.3d at 628 (citing *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992)).  Thus, Mahli must establish all of the elements of the claim beyond peradventure in order to obtain summary judgment in its favor.  *See Fontenot*, 780 F.2d at 1194.  The existence of fact issues on Admiral's civil arson defense precludes a determination of coverage at this stage of the proceedings. Mahli's inability to secure judgment as a matter of law on the initial inquiry of whether "the claim or obligation was in fact owed" eliminates the need to examine the remaining bad-faith elements and necessitates a denial of this request for summary judgment.

*Mitchell v. State Farm Fire & Cas. Co.*, 799 F. Supp. 2d 680, 696 (N.D. Miss. 2011) (granting the defendant's request for summary judgment on the plaintiff's claim for punitive damages) (citation omitted).

### 4.  Negligence (Extra-Contractual Damages)

Mahli contends that it is entitled to extra-contractual damages due to Admiral's negligent investigation of the fire loss.  "Insurers who are not liable for punitive damages may nonetheless be liable for consequential or extra-contractual damages (*e.g.*, reasonable attorney fees, court costs, and other economic losses) where their decision to deny the insured's claim is without a reasonably arguable basis but does not otherwise rise to the level of an independent tort."  *Broussard*, 523 F.3d at 628 (citations and internal quotation marks omitted).  The Mississippi Supreme Court has reasoned that extra-contractual damages are available pursuant to "the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, [and that] it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment."  *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992).  However, the existence of an arguable, good-faith reason for the denial of an insurance claim will defeat a request for extra-contractual damages (based on negligence) or punitive damages (based on bad faith).  *See Hoover*, 125 So. 3d at 642 (¶ 16), 643 (¶¶ 21-22).[17]

---

[17] The Court recognizes that "punitive damages" are extra-contractual in nature. However, in using the terms "extra-contractual damages" in this opinion, the Court refers to such damages as attorney's fees and compensation for emotional distress, and not punitive damages.

Summary judgment in favor of Mahli on its negligence claim will be denied for essentially the same reasons stated in the preceding section of this opinion.  A finding that Admiral breached the Policy by failing to pay a covered claim is a prerequisite to an award of extra-contractual damages or punitive damages.  "Mississippi caselaw provides for 'extra-contractual damages' when an insurance company has tortiously *breached* its contract."  *Essinger*, 529 F.3d at 270 (emphasis added); *see also Briggs v. State Farm Fire & Cas. Co.*, No. 3:14cv16, 2015 WL 2452694, at *1 (S.D. Miss. May 22, 2015) ("Neither extra-contractual nor punitive damages may go to the jury until the jury finds liability on the breach-of-contract claim . . . .") (citing *Broussard*, 523 F.3d 618).  Mahli's claim for coverage is a matter for trial given the existence of genuine issues of material fact on Admiral's civil arson defense.  As a result, the Court is presently precluded from holding that Admiral's "failure to pay a *valid* claim through the negligence of its employees" gave rise to foreseeable extra-contractual damages.  *Veasley*, 610 So. 2d at 295 (emphasis added).

In short, Mahli is not entitled to summary judgment on any of its claims or Admiral's defenses.

## C.    Admiral's Motion for Summary Judgment [72]

### 1.    Declaratory Judgment

Admiral argues that Mahli's request for a declaration that coverage is owed under the Policy should be denied due to the existence of clear and convincing evidence supporting its civil arson defense.  Admiral cites to the opinion of Gary Jones, a certified fire investigator, that the "cause of the fire is classified incendiary" in support of the first element of this defense.  (Jones Rep. [68-12 at ECF p. 16].)  Admiral largely relies on

the evidence discussed in section II.B.2. of this opinion in support of the remaining "motive" and "opportunity" elements.

Again, Mahli does not "dispute[] that the fire was incendiary." (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot. for SJ [84] at p. 15.)  Mahli argues that genuine issues of material fact exist as to Mahli's motive to commit arson and whether Singh, Mahli's owner, had the opportunity to start the subject fire.  Mahli references several circumstances as to motive, including, but not limited to, Mahli catching up on its mortgage payments in July of 2012;[18] business at the Hotel increasing by 31% from 2011 to 2012;[19] and, Mahli receiving an inadvertent Notice of Intent to Cancel Insurance Policies [83-25] in late September or early October of 2012.  Mahli argues that it was experiencing a financial turnaround and that it would be unreasonable to infer that Singh committed arson to obtain insurance proceeds if he believed the insurance was cancelled at the time of the fire.  On the issue of opportunity, Mahli points to Singh accounting for all of his time at the Hotel on the morning of the fire, and there being no indication that Singh went to the third floor of the Hotel, where the fire was started.  (*See* Singh EUO [68-3] 115:25-121:22.)  Mahli further notes that Singh arrived at the Hotel at approximately 11:00 a.m., and Christine Moore, an employee at a nearby McDonald's, reported seeing smoke rising from the third story of the Hotel just before 9:00 a.m.  (*See* Jones Rep. [68-12 at ECF p. 15].)

---

[18] (*See* Doc. No. [83-4].)

[19] (*See* Marcus Rep. [68-4] at p. 17.)  Mahli has retained John W. Marcus, a certified public accountant and forensic financial analyst, to provide expert witness services in this action.

Viewing all of the pertinent record evidence regarding the disputed elements of Admiral's arson defense in the nonmovant's favor, the Court finds that Admiral is not entitled to judgment as a matter of law on the issue of coverage.  Admiral, as the party bearing the burden of proving civil arson at trial,[20] has failed to "establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in . . . [its] favor." *Fontenot*, 780 F.2d at 1194.  Therefore, Admiral's request for summary judgment on count one of the Complaint is denied.

### 2. Negligence (Extra-Contractual Damages) and Bad Faith (Punitive Damages)[21]

The Court will consider Admiral's request for summary judgment on these claims conjunctively for several reasons.  First, neither punitive damages nor extra-contractual damages are available to an insured where an arguable basis for the denial of coverage exists.  *See Hoover*, 125 So. 3d at 642 (¶ 16), 643 (¶¶ 21-22); *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1179 (¶ 24), 1185 (¶ 55) (Miss. 2010).  Second, Mahli's summary judgment briefing does not clearly differentiate between these claims.  Mahli

---

[20] *See Reed*, 2007 WL 3357140, at *1.

[21] As discussed in sections II.B.3.-4., *supra*, fact issues regarding coverage preclude the Court from granting Mahli's request for judgment as a matter of law on these claims. The same does not hold true for Admiral's summary judgment motion.  Mahli has the burden of proving its entitlement to extra-contractual damages and punitive damages. *See Azlin*, 2012 WL 4482355, at *12-13 (citations omitted).  Consequently, Admiral may obtain summary judgment on these claims merely by showing that Mahli cannot establish the existence of a single essential element.  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

complains of a host of alleged inadequacies in Admiral's claim investigation and alternates between labeling the inadequacies as "negligence" and "gross negligence."[22] Third, "mere negligence" associated with an insurer's investigation will not support an award of punitive damages or extra-contractual damages.  *See, e.g.*, *Hoover*, 125 So. 3d at 642 (¶ 16); *Lisanby*, 47 So. 3d at 1178 (¶ 18); *Mitchell*, 799 F. Supp. 2d at 696. "The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit."  *Mitchell*, 799 F. Supp. 2d at 696 (quoting *Lisanby*, 47 So. 3d at 1178).[23] Also, Mahli's request for a declaration of coverage based on a breach of the insurance contract subsumes any allegation that mere negligence in Admiral's claim investigation led it to deny the claim in error.  *See Willis v. Allstate Ins. Co.*, No. 2:13cv60, 2014 WL 5514160, at *16 (S.D. Miss. Oct. 31, 2014) (holding that certain of the plaintiff's negligence allegations sounded in contract since her relationship with the defendant insurer arose by virtue of the insurance agreement) (citations omitted); Jackson & Childress*, supra*, § 10:2 ("[A]n insurer whose investigation is merely negligent, and which does not rise to the level of bad faith, nonetheless is liable for breach of contract where the negligent investigation leads to a wrongful denial of the claim.") (citations omitted).

---

[22] Mahli, at one point, sets forth the four elements of a negligence cause of action. Yet, Mahli fails to cite evidence and offer arguments in support of each element.

[23] *Cf. Estate of Jackson v. Miss. Life Ins. Co.*, 755 So. 2d 15, 24 (¶ 36) (Miss. Ct. App. 1999) (affirming the dismissal of the plaintiffs' failure to investigate allegations partially due to their inability to demonstrate that a proper investigation would have shown the insurer's defenses to be meritless).

The requirements for establishing a bad-faith denial of coverage are stated in section II.B.3. of this opinion.  The arguable basis and malice/reckless disregard elements are questions of law for the trial court to decide.  *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232-33 (¶ 18) (Miss. 2001) (citation omitted).  "[A]n arguable basis is a reason 'sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim . . . .'"  *Sobley v. S. Natural Gas Co.*, 302 F.3d 325, 341 n.41 (5th Cir. 2002) (citation omitted); *see also Broussard*, 523 F.3d at 628 (providing that the insurer "need only show that it had reasonable justifications, either in fact or in law, to deny payment") (quoting *Wigginton*, 964 F.2d at 492).  "There may well be evidence to the contrary."  *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005), *aff'd*, *Hood v. Tinta*, 247 Fed. Appx. 531 (5th Cir. 2007).  Even if an exclusion or defense does not ultimately bar coverage, it can still constitute an arguable basis.  *Sobley*, 302 F.3d at 341.  Generally, an honest mistake, simple negligence, or ordinary oversight leading to the denial of coverage falls outside of the scope of misconduct required to meet the malice/reckless disregard element of a bad-faith claim.  *See Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1098 (Miss. 1996).  "The wrong complained of must not be an 'ordinary tort' such as could be 'the produc[t] of forgetfulness, oversight or the like,' but must be more in the nature of [a] 'heightened' tort evincing 'gross, callous or wanton conduct, or . . . accompanied by fraud and deceit.'"  *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988) (quoting *State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985)).  Mahli's various complaints regarding Admiral's investigation of the subject fire loss claim will now be measured against the controlling law.

-43-

### a.   Preponderance of the Evidence Versus Clear and Convincing Proof

Mahli argues that Admiral breached a duty by denying its claim under a preponderance of the evidence standard, as opposed to a clear and convincing standard of proof.  As noted above, there is a discrepancy between Dorothy Keenan's deposition testimony and post-deposition affidavit regarding which standard Admiral considered in denying Mahli's claim.  Mahli's argument fails to justify an award of extra-contractual damages or punitive damages even assuming that Admiral relied on a preponderance of the evidence standard.

The Mississippi Supreme Court has held that an insurer must "prove" civil arson "by clear and convincing evidence" in a lawsuit brought "by the insured on a policy or . . . in an action by the insurer for declaratory judgment."  *McGory*, 527 So. 2d at 635. However, Mahli fails to cite, and the Court has not identified any authority holding that an insurer must utilize the clear and convincing standard in denying a claim outside the confines of litigation.  Such a determination would run counter to the principle that an "exclusion or defense can, of course, constitute an 'arguable basis' even if it does not ultimately bar coverage."  *Sobley*, 302 F.3d at 341; *see also Polk*, 897 F.2d at 1350 ("[I]t is by no means clear that in order to have an arguable reason to deny a claim the insurance company must *then* be able to *prove* that it is invalid, as opposed to having a good reason to believe that it is.").  Courts simply look to the existence of "credible evidence" in determining the existence of an arguable basis for an insurer's claim denial.  *Willis*, 2014 WL 5514160, at *7 (quoting *Tipton v. Nationwide Mut. Fire Ins. Co.*, 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004)).

Like the plaintiff before the Court in *Russ*, Mahli also places too much emphasis on the "clear and convincing burden of proof, while overlooking the fact that arson may be proven circumstantially."  2013 WL 1310501, at *27 (citation and internal quotation marks omitted).  In *Russ*, the Court explained:

> "[C]ircumstantial evidence is evidence that, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *States v. State*, 88 So.3d 749, 756 (¶ 27) (Miss.2012) (citation and internal quotation marks omitted).  Even in criminal cases, where the burden of proof is beyond a reasonable doubt, a conviction may be obtained on the basis of circumstantial evidence alone.  *Bostic v. State*, 531 So.2d 1210, 1215 (Miss.1988) (citations omitted).

*Id.*

Mahli's reliance on the Mississippi Supreme Court's decision in *Bankers Life and Casualty Co. v. Crenshaw*, 483 So. 2d 254 (Miss. 1986), *aff'd on other grounds*, 486 U.S. 71, 108 S. Ct. 1645, 100 L. Ed. 2d 62 (1988), is also unavailing.  In *Crenshaw*, the court affirmed an award of punitive damages against the defendant health insurer where, *inter alia*, the insurer denied a claim for benefits pursuant to "an exclusion under the policy which its executive personnel knew was invalid under Mississippi law."  483 So. 2d at 270.  Admiral's denial of the subject insurance claim was based on its determination that Mahli was responsible for the incendiary fire at the Hotel, which fell within the Policy provision excluding coverage for damage resulting from any "[d]ishonest or criminal act by you, any of your partners, members, officers, managers, employees . . ., or anyone to whom you entrust your property for any purpose."  (Denial Letter [67-1] at pp. 1-2; Policy [72-1 at ECF pp. 31-32].)  Civil arson by an insured has been a long-standing defense to coverage under Mississippi law, regardless of the

existence of a specific policy provision to that effect.[24]  *Crenshaw* says nothing authorizing an award of punitive damages against an insurer that relies on a valid defense to coverage, but fails to use the burden of proof required to obtain a judgment in a civil action in denying the claim outside of the courtroom.

### b.   Admiral's Purported Failure to Interview Witnesses

Mahli argues that Admiral failed to conduct a fair and adequate investigation by not interviewing the employees present at the Hotel on date of the fire, other than Singh, as well as a witness who reported seeing smoke at the Hotel hours before Singh's arrival.  Mahli cites two factors in support of its argument pertaining to the Hotel employees:  (1) the indication in Admiral's claim file that the adjuster was to take their statements;[25] and (2) adjuster Joseph LaHatte testifying that he provided the names of witnesses to Admiral, but did not contact the witnesses.  (*See* LaHatte Dep. [66-4] 56:12-57:17.)  Admiral relies on the above-discussed affidavit of its attorney, Richard Tubertini, in opposition to this argument.  Tubertini states that he interviewed employee Ariel Lampkin twice, and employee Donna Demo on one occasion.  (*See* Tubertini Aff. [85-16] at ¶¶ 19-20, 29-30.)  LaHatte's testimony, to the effect that he did not personally interview witnesses, does not preclude the possibility of someone else, such as Tubertini, interviewing individuals on Admiral's behalf.  Mahli's summary judgment briefing even concedes that Admiral relied on its counsel's communications with others,

---

[24] *See, e.g.*, *Sullivan v. Am. Motorist Ins. Co.*, 605 F.2d 169, 170 (5th Cir. 1979); *Rock*, 2009 WL 1854452, at *6; *Davidson v. State Farm Fire & Cas. Co.*, 641 F. Supp. 503, 507 (N.D. Miss. 1986); *McGory*, 527 So. 2d at 634.

[25] (*See* File Notes [68-15 at ECF pp. 5-6].)

such as the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), as part of its investigation.[26]  Thus, Mahli's contention that Admiral did not interview anyone other than Singh constitutes unsubstantiated speculation and fails to preclude summary judgment.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994) (finding that the plaintiff could not avoid summary judgment by resting on conjecture and speculation).

Even overlooking Tubertini's affidavit regarding his interviews of Lampkin and Demo, Admiral's purported failure to interview employees at the Hotel does not establish Mahli's entitlement to damages beyond those available for a breach of the insurance policy.  It is well settled that an insurer has a duty to conduct an adequate and prompt investigation of an insurance claim.  *See Hoover*, 125 So. 3d at 642 (¶ 16) (citation omitted).  Yet, neither extra-contractual damages nor punitive damages are available unless the insurer's negligence is such that a proper investigation "would easily adduce evidence showing its defenses to be without merit."  *Id.*; *see also Broussard*, 523 F.3d at 630.  Mahli fails to indicate what information Lampkin or Shirley Rushing, the employees at the Hotel at the time of the fire other than Singh, could have furnished that would easily defeat Admiral's civil arson defense.  Stated differently, there is nothing before the Court indicating that Lampkin or Rushing would have told Admiral that the fire started accidently; that Singh did not arrive at the Hotel approximately forty-five minutes before the fire was reported to the local fire department; that Singh was in

---

[26] "It should be noted that Admiral relied extensively on coverage counsel's conversations with the ATF, who, nearly three full years after the fire, still has not made an arrest in this case."  (Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 25 n.17.)

their presence the entire time he was at the Hotel; or, that Mahli was a profitable business in no danger of failing in the absence of a significant infusion of capital.  This Court has rejected a negligent investigation claim under analogous circumstances.  *See Russ*, 2013 WL 1310501, at *12, 16 (noting the plaintiff's failure to identify any specific evidence the defendant insurer could have obtained by interviewing certain witnesses, which would have shown its coverage defenses to be meritless).

Mahli contends that the time the fire was "started is in *dispute*" because Christine Moore, a McDonald's employee, reported seeing smoke rising from the Hotel shortly before 9:00 a.m.  (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot. for SJ [84] at p. 20) (emphasis added).  Mahli then argues that Admiral failed to follow the explicit recommendation of its cause and origin expert, Gary Jones, that a detailed interview of Moore be undertaken.  In light of Dorothy Keenan's deposition testimony that Admiral unsuccessfully attempted to locate Moore,[27] Mahli asserts that the likely reason Admiral was unsuccessful "is they simply did not want to hear what she had to say."  (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot. for SJ [84] at p. 20.)  Mahli's speculative, conclusory assertion does "not adequately substitute for specific facts showing a genuine issue for trial."  *Oliver*, 276 F.3d at 744.  Moreover, the existence of a *dispute* regarding the timing of the fire hardly means that Admiral lacked an arguable basis for denying the claim.  "The existence of a viable dispute means that both sides had arguable reasons to litigate the issue."  *Hood*, 532 F. Supp. 2d at 803 (citation omitted); *see also*

---

[27] (*See* Keenan Dep. [68-11] 61:13-17.)  The Court resolves the discrepancy between Keenan's deposition testimony and Tubertini's affidavit regarding Admiral's interview of Moore *vel non* in favor of Mahli for summary judgment purposes.  *See Sierra Club, Inc.*, 627 F.3d at 138.

*Broussard*, 523 F.3d at 628 (citing with approval *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1362, 1364-65 (N.D. Miss. 1988), in which the defendant insurer's motion for summary judgment was denied because of the existence of fact issues, but plaintiff's claim for punitive damages was rejected "because the facts, although contested, provided the insurer with an arguable basis for denying the plaintiff's claim").

### c.    Admiral's Refusal to Believe Singh

Mahli contends that Admiral breached its duty to conduct a fair and adequate investigation by discounting Singh's account of his time at the Hotel on the day of the fire, and by equating his mere presence at the Hotel with the opportunity to start the fire. As an initial matter, Mahli fails to cite any authority holding an insurer liable for bad faith or awarding extra-contractual damages simply because it declined to believe or accept an insured's account of events.  The proposition that an insurer must believe the word of its insured runs counter to an insurer's ability to defeat coverage on the basis of an insured's material misrepresentations.  *See, e.g.*, *Clark v. Aetna Cas. & Sur. Co.*, 778 F.2d 242, 247 (5th Cir. 1985); *McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (¶ 15) (Miss. 1997).  Further, Singh's testimony provided Admiral with an arguable basis to conclude that the opportunity element of its civil arson defense was met.  Singh testified that he arrived at the Hotel at 11:00 a.m., and that he was alerted to the existence of the fire sometime thereafter.  (*See* Singh EUO [68-3] 112:12-14, 121:7:14, 157:23-158:6.) Taking into account that the fire was reported at approximately 11:45 a.m.,[28] Singh's testimony can be construed as "credible [circumstantial] evidence . . . lead[ing] a

---

[28] (*See* Jones Rep. [68-12 at ECF p. 67].)

reasonable insurer to"[29] determine that he had the opportunity to start the fire.  *Cf. Hall*, 2009 WL 198304, at *3 (the insured was present at the scene of the fire less than thirty minutes before the fire department was called); *Reed*, 2007 WL 3357140, at *2 (the insured left the subject property approximately twenty to thirty minutes prior to the fire being reported).

Mahli makes the related claim that Admiral failed to investigate or follow up on Singh's suggestions as to others who may have started the fire.  At his EUO, Singh testified that an unidentified individual called the front desk in June, July, or August of 2012, and threatened to blow up the Hotel.  (*See* Singh EUO [68-3] 186:5-189:5.) Singh also suspected that a man who had previously started a fire that damaged the Hotel during a domestic dispute in 2010, or maybe some friend or relative of this individual, started the subject fire.  (*See* Singh EUO [68-3] 96:15-97:13, 199:15-202:10.)[30]  One problem with this criticism of Admiral's investigation is that insurers "are not required to disprove all possible allegations made by a claimant.  They are simply required to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation."  *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (¶ 16) (Miss. 2003).  Mahli's suggestion that a private insurer has a duty to act as a law enforcement agency and identify and exclude all potential suspects, other than the insured, as part of a claim investigation is not well taken.  Admiral's present

-----

[29] *Sobley*, 302 F.3d at 341 n.41.

[30] Although there were two rooms rented at the Hotel on the date of the fire, it does not appear that any guests were present when the local fire department was called. (*See* Singh EUO [68-3] 160:12-13; Jones Rep. [68-12 at ECF p. 11].)

burden is "only [to] show that it had reasonable justifications, either in fact or law, to deny payment" based on civil arson. *Broussard*, 523 F.3d at 628.  To the extent Mahli has evidence that indicates someone else may have set fire to the Hotel, such facts would weigh on Admiral's ability to succeed on its defense at trial and not establish bad faith or negate the existence of an *arguable* basis for the claim denial. *See Sobley*, 302 F.3d at 341; *Hood*, 532 F. Supp. 2d at 803.

Another problem with Mahli's contention that Admiral failed to investigate other potential perpetrators is that it ignores Admiral's "extensive[]" reliance on its "coverage counsel's conversations with the ATF . . . ."  (Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 25 n.17.)  Tubertini's affidavit states that he consulted with ATF investigator Edwin Robinson regarding Singh's theories as to who may have started the fire.  (*See* Tubertini Aff. [85-16] ¶¶ 21-25.)  The Court finds nothing unreasonable about an insurer conferring with, or relying on a law enforcement agency as part of its investigation when the acts or omissions under investigation could lead to the imposition of criminal penalties.  Further, an insurer's reliance on the advice of legal counsel militates against a finding of bad faith.  *See McKneely*, 862 So. 2d at 536 (¶ 18) ("Generally, a client's reliance upon advice of his attorney prevents a finding of bad faith and the imposition of punitive damages.") (citation omitted); *Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 533 (Miss. 1997) (noting that advice of counsel is one factor to be evaluated in determining whether an insurer possessed a legitimate basis for denying a claim) (quoting *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 282 (5th Cir. 1988)).

### d.    Mahli's Finances

Mahli argues that "Admiral conducted no actual investigation into Mahli's finances . . . ." (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot. for SJ [84] at p. 26.)  The summary judgment record evidences the following particulars relating to Admiral's investigation of Mahli's financial condition prior to the claim denial:

- On November 14, 2012, Admiral, through LaHatte, requested Mahli's financial records for the five years preceding the loss.  (*See* Doc. No. [85-17].)

- On November 30, 2012, LaHatte again requested the financial records.  LaHatte received revenue reports, monthly financial summaries, and other financial documents on this same date.  (*See* Doc. No. [85-15].)

- In January of 2013, Admiral learned that Mahli had never paid its property taxes for 2011, and Mahli owed back taxes exceeding $25,000.  (*See* Tax Records [85-19].)

- On February 7, 2013, pursuant to a prior request, Tubertini received additional financial documents that Mahli's counsel obtained from its accountant, Dan Burton, including depreciation schedules for 2009-2011 and IRS forms for 2005-2009.  (*See* Doc. No. [85-18].)

- On February 28, 2013, pursuant to a prior request, Tubertini received Singh's tax returns for 2009-2011.  (*See* Doc. No. [85-20].)

- On March 20, 2013, Admiral, through Tubertini, examined Singh under oath and asked numerous questions concerning Mahli and Singh's financial situations.  (*See* Singh EUO [68-3].)[31]

- In May and June of 2013, Admiral received numerous financial documents (including, but not limited to, tax returns, accounts payable data, bank statements, billing statements, and claim forms pertaining to the BP/Deepwater Horizon settlement) from Mahli in response to requests for production propounded in the State Action.  (*See* Doc. Nos. [85-21], [85-22].)

---

[31] Admiral had attempted to take Singh's EUO on February 13, 2013.  (*See* Doc. No. [68-21].)  However, that EUO was continued when it became apparent that Singh, whose primary language is Punjabi, could not answer Tubertini's questions without the aid of an interpreter.

Mahli's conclusory allegation that Admiral did not conduct an actual investigation fails to create a genuine issue for trial given the above-listed circumstances.  *See Oliver*, 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

Mahli further takes issue with Admiral for not contacting its accountant, Dan Burton.  Purportedly, Burton "would certainly be the most knowledgeable person about Mahli's finances."  (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot for SJ [84] at p. 26.) Mahli's summary judgment briefing highlights Burton's statement that Singh possessed "family holdings in India, which included various income producing properties such as hotels and farms which provided additional funds to Mr. Singh upon request."  (Burton Aff. [83-29] at ¶ 13.)

The Court is unconvinced that Admiral's failure to contact Burton renders the investigation legally deficient.  Given the extensive amount of financial documentation Admiral obtained prior to denying Mahli's claim, some of which originated from Burton, the Court is uncertain what remaining facts and figures Burton could have provided had he been contacted directly by the insurer.  Further, Admiral asked Singh about his property holdings in India at his EUO.  Singh stated that he owned farm property, but that it did not generate income for him.  (Singh EUO [68-3] 56:14-57:1.)  Moreover, on July 6, 2012, only approximately three months before the subject fire, Burton was of the opinion that requiring Mahli to pay property insurance and taxes and make mortgage payments would place "Singh at considerable risk."  (Burton Letter [83-3] at pp. 1-2.) Mahli has not demonstrated that an investigation involving Admiral directly contacting

Burton "would [have] easily adduce[d] evidence showing its [civil arson] defense[] to be without merit." *Hoover*, 125 So. 3d at 642 (¶ 16).

Mahli also takes issue with Admiral's extensive reliance on the above-referenced e-mail from Sandeep, Singh's daughter, to Marty Desai, providing that the business was "not doing that well" and Mahli was having a difficult time paying its electric bill. (Sandeep Dep. [85-8 at ECF p. 4].) Mahli questions the reliability of the e-mail since Sandeep was in India when she sent the communication. Mahli's own financial expert has expressed the following opinion regarding Sandeep, notwithstanding his recognition that she was outside of the United States for several months in 2012:

> Sandeep Kaur, Mr. Singh's daughter, was a key person in the management of the Howard Johnson Express Inn. From the beginning of the Singh family's relationship with Howard Johnson, Sandeep was responsible for "the paperwork." She reviewed the bills, organized and prioritized them, prepared checks for payment and instructed her father concerning the payment of the bills.

(Marcus Rep. [68-4] at p. 20) (footnote omitted). A supplemental report prepared by Mahli's expert also discusses Sandeep's e-mail:

> In Sandeep's email to Mr. Desai . . . she said that business was not good because it was not being managed properly. When she was in India she was worried that the important day-to-day tasks were not being done, bills were not being paid. She knew that her father was not a businessman and she was concerned about his health. Mr. Singh had certain weaknesses but Sandeep did her best to help him run the business.

(Marcus Suppl. Rep. [83-13] at p. 2.) The Court finds Mahli's critique of Admiral's reliance on the subject e-mail in support of the motive element of its civil arson defense to be less than convincing given Mahli's own expert's opinions regarding Sandeep's *key* role in the business.

A few other of Mahli's criticisms pertaining to Admiral's investigation into the issue of Singh's financial motivation to commit arson warrant mentioning.  First, Mahli asserts that Admiral did not investigate the possibility of the mortgage company's involvement in the fire.  As previously discussed, an insurer is "not required to disprove all possible allegations made by a claimant."  *McKneely*, 862 So. 2d at 535 (¶ 16).  Second, Mahli argues that Admiral failed to give proper consideration to the inference that Singh lacked the motivation to commit arson because he may have thought the insurance had been cancelled at that time.  Admiral's acknowledgment of Mahli's claim for insurance proceeds only one day after the subject fire[32] could also "lead a reasonable insurer to" infer that Singh believed insurance coverage existed.  *Sobley*, 302 F.3d at 342.  Finally, Mahli makes the overarching argument that Admiral cherry-picked information favorable to the denial of coverage and ignored "the obvious reality of Mahli's improving financial situation."  (Pl.'s Mem. in Supp. of Resp. in Opp. to Mot. for SJ [84] at 26.)  Even Mahli's financial expert concedes "[t]here is no doubt that Mahli, LLC was a financially troubled enterprise.  Poor choices were made in prioritizing the payment of bills and in allocating limited resources."  (Marcus Suppl. Rep. [83-13] at p. 2.)  Marcus also provides that Mahli suffered net losses of $44,058 in 2010, $354,018 in 2011, and $186,768 in 2012.  (*See* Marcus Rep. [68-4] at p. 19.)  This is not the sort of "easily adduced evidence" the Court can rationally construe as establishing Admiral's position on the motive element of its arson defense "to be without even arguable merit."  *Sobley*, 302 F.3d at 342.

---

[32] (*See* Acknowledgment of Claim [83-10].)

### e.      Summation

Mahli has failed to meet its "heavy burden" of showing "that there was no reasonably arguable basis for denying the claim."  *Windmon v. Marshall*, 926 So. 2d 867, 872 (¶ 22) (Miss. 2006) (citation omitted).  Admiral's investigation into the claim included:  (i) retaining a local adjuster to determine the extent of damages;[33] (ii) retaining a fire investigator to determine the cause and origin of the fire;[34] (iii) retaining legal counsel, who, among other things, took the EUO of Singh and communicated with the ATF regarding its fire investigation;[35] and (iv) obtaining a vast amount of data pertaining to Mahli and Singh's finances.  *See* section II.C.2.d., *supra*.  As discussed in various sections of this opinion, Admiral's investigative efforts revealed at least "some credible evidence" supporting each element of its civil arson defense.  *Willis*, 2014 WL 5514160, at *7.[36]  Viewing the evidence in Mahli's favor does not alter this result.

The Court also finds no evidence of "malice or gross negligence in disregard of the insured's rights."  *Hoover*, 125 So. 3d at 643 (¶ 22).  While Admiral's claim investigation could be considered far from perfect, neither simple negligence, isolated mistakes, nor ordinary oversight will support the recovery of punitive damages for bad

---

[33] (*See* Keenan Dep. [68-11] 45:10-19.)

[34] (*See* Jones Rep. [68-12].)

[35] (*See* Singh EUO [68-3]; Pl.'s Mem. in Supp. of Mot. for SJ [69] at p. 25 n.17.)

[36] Admiral's reliance on a valid defense to coverage and not insubstantial investigation distinguishes this action from Mahli's principal bad-faith authority, *Crenshaw*.  There, the health insurer relied on a policy exclusion that "was invalid under Mississippi law," and neither interviewed the claimant nor requested his medical records.  *Crenshaw*, 483 So. 2d at 270.

faith.  *See Caldwell*, 686 So. 2d at 1098.  Further, no "substantial evidence from which it could be inferred that . . . [Admiral] deliberately refused to pay in the face of knowledge that it could not reasonably expect to succeed on any claimed defense" has been presented to the Court.  *Sobley*, 302 F.3d at 340 (citation and internal quotation marks omitted).  Admiral is therefore entitled to summary judgment on Mahli's requests for extra-contractual damages and punitive damages.

### 3.    Unjust Enrichment/Constructive Trust

Unjust enrichment applies "where no legal contract exists" and where "the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received."  *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (¶ 14) (Miss. 2012) (citing *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005)).  The existence of an actual contract negates a claim for unjust enrichment, which is based on a contract implied-in-law.  *See, e.g.*, *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 657 (S.D. Miss. 2013); *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 453 (S.D. Miss. 2010); *Mayer v. Angus*, 83 So. 3d 444, 451 (¶ 24) (Miss. Ct. App. 2012). Neither Admiral nor Mahli disputes the existence of the Policy, the legal contract under which insurance proceeds are sought in this action.  Therefore, Admiral is entitled to summary judgment as a matter of law on Mahli's unjust enrichment claim.

"A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property."  *Smiley v. Yllander*, 105 So. 3d 1171, 1175-76 (¶ 12) (Miss. Ct. App. 2012) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶ 24) (2000)).  The remedy of a constructive trust is unavailable to Mahli

since it cannot recover on its underlying cause of action for unjust enrichment.  Further,

the existence of a confidential relationship between the parties is a prerequisite to the

imposition of a constructive trust.  *See Mosley v. GEICO Ins. Co.*, No. 3:13cv161, 2014

WL 7882149, at *7 (S.D. Miss. Dec. 16, 2014) (citations omitted).  Mahli does not allege

that it shared a confidential relationship with Admiral.  Even if such an allegation were

made, it would likely falter under the Mississippi rule that "there is no fiduciary

relationship or duty between an insurance company and its insured in a first party

insurance contract."  *Tipton*, 381 F. Supp. 2d at 571 (citation omitted).  As a result,

Mahli's request for the creation of a constructive trust encompassing all of the premiums

it paid to Admiral will be dismissed.

### 4. Specific Performance and Indemnification

Mahli's Complaint requests "Specific Performance of the subject insurance

contract."  (Compl. [1] at ¶ 42.)  Mahli also asserts that Admiral is obligated "to provide

full insurance coverage to Plaintiff for all damage to the insured property and loss of

income" under the indemnity count of the Complaint.  (Compl. [1] at ¶ 47.)  The Court

finds these allegations to be duplicative restatements of Mahli's demand for a

declaratory judgment under count one.  "Plaintiff respectfully seeks a declaration from

this Court that . . . ADMIRAL INSURANCE COMPANY breached its policy obligations to

its insured and owes coverage for the damage sustained to Plaintiff's insured property

and loss of income due to fire . . . ."  (Compl. [1] at ¶ 24.)  Whether Admiral breached its

obligation to remit proceeds under the Policy is an issue for trial.  Mahli's redundant

counts for indemnification and specific performance are subject to dismissal.  *Cf.*

*Spansel*, 683 F. Supp. 2d at 453 (dismissing a request for indemnity since it merely

duplicated the plaintiffs' breach of contract claim); *Oxford Mall Co. v. K & B Miss. Corp.*, 737 F. Supp. 962, 967 (S.D. Miss. 1990) (dismissing tort allegations that were "in actuality nothing more than a reiteration of the breach of contract claims").

### 5. Waiver and Estoppel

Admiral argues that "Plaintiff's count for 'Waiver and Estoppel,' Compl. ¶¶43-45, does not present a cause of action." (Def.'s Mem. Brief in Supp. of Mot. for SJ [73] at p. 19.) Count four of the Complaint essentially asserts that Admiral cannot rely on evidence it obtained after denying Mahli's claim as grounds for the existence of an arguable basis for the claim denial. The Court's preceding arguable basis determination was grounded on facts or evidence Admiral obtained before denying Mahli's claim for coverage on July 9, 2013. Therefore, Mahli's waiver and estoppel arguments are now moot and will not proceed to trial regardless of whether or not they constitute a specific cause of action.

Based on the foregoing, only Mahli's declaratory judgment/breach of contract cause of action will be tried.

### CONCLUSION

The Court has fully considered all of the parties' arguments and authorities in deciding the pending motions. Those matters not specifically addressed above fail to alter the Court's rulings.

IT IS THEREFORE ORDERED AND ADJUDGED that Mahli, LLC's Motion to Strike Dockens [64] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that Mahli, LLC's Motion to Strike LaHatte [66] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Mahli, LLC's Motion for Summary Judgment [68] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that Admiral Insurance Company's Motion to Exclude Agosti [70] is granted, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that Admiral Insurance Company's Motion for Summary Judgment [72] is granted in part and denied in part. The motion is granted to the extent the following of the Plaintiff's claims are dismissed with prejudice:  negligence (extra-contractual damages), gross negligence and bad faith (punitive damages), specific performance, waiver and estoppel, indemnity, and unjust enrichment/constructive trust.  The motion is denied to the extent the Plaintiff's declaratory judgment/breach of contract claim remains pending for trial.

SO ORDERED AND ADJUDGED this the 18th day of August, 2015.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE